v. David Tran. Appellant? Yes, sir. Ready to proceed? Yes, sir. You may. Good morning and may it please the court. I'm John Gennard, arguing on behalf of Appellant David Tran in the case of United States v. Tran. This case presents a difficult two-part question under United States v. Carr. First, what does it mean, what does it actually mean to have close assistance of counsel prior to entrance of a guilty plea for a defendant? And then secondly, how important is that particular factor under the U.S. v. Carr seven-part test? Addressing the first part of that question, close assistance, I would note that the word close is an important word, right? It implies some quality beyond just mere assistance or mere presence. It suggests that the defendant prior to entering his guilty plea actually had, again, some level of good assistance, quality assistance, close assistance. And as this court has described that test in United States v. Carr, it's the McKnight which the parties have cited, close assistance is a fact-intensive inquiry, right? The district court should look at the type of assistance that the defendant received when they claimed that they didn't have close assistance and consider what actually happened in the case. In this case, Mr. Tran is primarily objecting to the assistance that he received from a court-appointed attorney named Mr. Jenkins. And when we look at the record, we see that in the time period leading up to the scheduled trial date, Mr. Tran sent a letter to the judge saying, my attorney, Mr. Jenkins, has not meaningfully consulted with me. He's only given me 10 minutes of his time thus far. He hasn't done anything else. He hasn't talked to me as an advisement. And I don't feel that I'm ready for trial. And so Mr. Tran is actually seeking a continuance at that point, kind of pro se. The district court denies the request from Mr. Tran. They proceed to trial. And then on the date of trial, shortly after they impaneled the jury, Mr. Tran changes to enter a guilty plea. And signs a factual basis and then proceeds as a colloquy with the district judge, where the judge goes over a fairly standard script with him, asks him the kind of questions that you would see in that script. Is he satisfied with his counsel? He says yes. Is he pleading voluntarily? He says yes. Otherwise, we don't know anything about what Mr. Jenkins said to Mr. Tran. We don't know how he advised him. We don't have that in the record. We do know that Mr. Jenkins, for example, apparently did not respond to government's pretrial motions in Lemony to admit certain 404B evidence. We don't see that Mr. Jenkins filed any motions of any real kind, other than various motions to continue and at times motions to withdraw himself as counsel. After the guilty plea is entered and accepted, and we're in the phase leading up to sentencing, Mr. Tran again notifies the court that Mr. Jenkins has not been advising him or participating in the pre-sentencing process. And eventually Mr. Jenkins withdraws from the case. Mr. Tran receives a new counsel from the Federal Public Defender's Office and at that point files his motion to withdraw his guilty plea. That is his counsel. And when the judge issues her order of reasons, she very briefly, maybe in a sentence or two, says you had an opportunity to consult with counsel prior to entering your guilty plea. But there's no real in-depth factual discussion of what that counsel may or may not have done for Mr. Tran. So if close assistance is a fact of intensive inquiry and if close assistance of counsel is an important prerequisite, it would seem in this case that the facts do not support that Mr. Tran actually received that close assistance of counsel. Because all we can say about Mr. Jenkins is that he was present. He seemed to have kind of a court where to hold that just showing up satisfies the test of close assistance of counsel, then that test almost becomes meaningless. It really isn't close assistance of counsel. It's just assistance. The second part of that question then is how important is that particular factor in the Carr test? We see under United States v. Carr seven factors, but as the Fifth Circuit has stated, no factor is preeminent. You consider them all and they seem to bear a different weight, although I don't believe that that's ever been specifically described in which one weighs more than the other. Five of the factors, though, do seem to be a bit more administrative in nature. They look at things like the delay between the terms of the plea, whether the defendant is claimed to be innocent, whether there would be prejudice to the government, whether it would waste judicial resources, whether it would be inconvenient to the court. But then the last two factors both really imply some constitutional considerations. Was Mr. Tran incarcerated throughout this period of time from, because he got several, well, several continuances were granted. Yes, Your Honor. He was incarcerated. So he was incarcerated the entire time. That's correct, Your Honor. But of two of those factors, close assistance of counsel and whether the plea was knowingly and voluntarily entered do seem to imply constitutional considerations that perhaps the other factors don't. Obviously, assistance of counsel is a Sixth Amendment right and knowing involuntary plea waives certain constitutional rights that the accused has, the privilege against self-incrimination, the right to call witnesses and have his case heard by a jury. And it's difficult to unravel exactly the interplay between the close assistance of counsel test under United States v. Carr and the Sixth Amendment right to counsel. And I think we saw the difficulty of that in this Court's first opinion in United States v. Gardner. Now, that was an opinion that we, as the appellant, relied on quite heavily in our opening brief. And unfortunately, a week after we filed our brief, that opinion was withdrawn and was replaced with a new one. Now that it has been withdrawn, what is now your best case for why Tran met his burden? Withdrawing Gardner, our best case, I would argue, would be United States v. McKnight. And then McKnight discusses additional cases, which unfortunately we didn't discuss in our opening brief and, of course, in hindsight, having relied heavily on the case that was withdrawn, was unfortunate for us. But in United States v. McDonald, both in that case and in some cases cited within, it talks about the fact-intensive inquiry into close assistance of counsel. And in several other cases where a defendant said he didn't have close assistance of counsel, it goes through the things that courts found. They say, well, we find that you did have close assistance of counsel because your attorney did advise you on this and stated so. Your attorney did file several pretrial motions. Your attorney identified certain conflicts of interest. So in those cases, they always kind of show a good record of what an attorney did on behalf of their client. In this case— Should we at all consider over and above a neglectful counsel who was his third attorney, shouldn't we also consider whatever benefit of counsel he received from the first two? I think Mr. Schwab was one, and there was a second attorney whose name escapes me, and then Mr. Jenkins. Isn't his advice of counsel all three of them? Your Honor, first, as regards to Mr. Schwab, he was the first appointed attorney very briefly assigned and then Mr. Tran's family hired Mr. Shapiro. So Mr. Shapiro was his counsel for some period of time, and we know the most about Mr. Shapiro from the record. Primarily his discussions with Mr. Tran about a potential suppression motion, Mr. Shapiro did not believe that that motion would be successful. So he certainly received advice of counsel at that time. I think the difficult question, which I couldn't find a great answer to in the case, is what level of close assistance do you need at that moment in time or leading up to that time? I didn't see in the record that Mr. Shapiro advised Mr. Tran in-depth about the guilty plea and how that worked and what the consequences of that would be. But his grievance here before this Court, correct me if I'm wrong, is that he thought when he entered the plea that he could revisit the suppression issue before this Court? That's correct, Your Honor. And that's something that Mr. Shapiro discussed with him, the suppression motion, not whether he could bring it here, but the suppression issue itself? Yes, Your Honor. My understanding is that Mr. Shapiro discussed the suppression motion with Mr. Tran. I do not believe the record shows that Mr. Shapiro had the conversation with him stating that if you plead guilty, you would waive that. And the colloquy with the district judge, she asks, whether he's, of course, held the standard questions, do you have any defenses? Are you suggesting to us that the motions to suppress were not a defense and that we should discount these questions from the Court? Or it seems like that would be a defense to a charge is to suppress evidence. Is it a technical argument you're making that it isn't really a defense? It's more of a procedural evidentiary matter that shouldn't be considered as part of this colloquy? Well, Your Honor, certainly the colloquy serves the purpose of asking the accused these various questions, right? In this case, it wasn't specifically addressing the suppression motion, but it did address defenses in general. I mean, he never wants, Mr. Tran himself never wants, as the judge, just so that we're clear, you're asking me these questions. I do expect to visit the suppression issues on appeal. I'm pleading guilty subject to that. He doesn't raise any of that. Obviously, the Court is going to move right on to sentencing, and that's it. Now, it's not a plea agreement, as I understand. It's a straight-up plea. But still, that's the purpose of the questioning. Yes, Your Honor, and we would count it that that's also the purpose of the close assistance of the advising counsel at that time. We wouldn't expect Mr. Tran to know everything, the full consequences of the colloquy and what the Court is getting at when he answers his question. And so, his objection, again, is to the lack of assistance leading into the guilty plea and making the guilty plea from his counsel at that time. Does he maintain, does Mr. Tran maintain that he advised Mr. Jenkins that I am going to appeal the suppression issue? I do not believe that Mr. Tran has stated that he told Mr. Jenkins he planned to appeal the suppression issue. And I will save the rest of my time for rebuttal, barring any questions. You've got 140 months. Yes, Your Honor. What's the max? So, if the plea is withdrawn, then we're back to where he was before he ever entered a plea agreement? Yes, Your Honor. All the charges are back in play, and all the time he could possibly get is back in play? Yes, Your Honor. How much time is that? I don't recall the, well, the max, I think, would have been life. The guidelines range provided, I don't remember the upper end. I know that the sentence he received was within the guidelines range, maybe around the median or midpoint of the guidelines. All right. So, just to be clear, if we allow that the plea could be withdrawn, it's like pressing reset, and he could go right back to where there's a possibility he could get a life sentence? Yes, Your Honor. Yeah, I've discussed that with Mr. Tran. Mr. McLaren? Yes, sir. That's right. You may proceed. Good morning. May it please the Court, Ryan McLaren for the United States. I'm joined this morning by AUSA Kyle Daly. Also present here is AUSA David Howler, who is trial counsel in this case. I want to start by, really, this is, what I plan to do is go over three facts that really highlight why Judge Malazzo's analysis of the car factors was correct. I then want to go over the car factors in particular. I don't think that I'm going to take the full time, but obviously I'm happy to answer any questions. The first of those three facts is at ROA 374 to 75, that's AFPD Marone's motion to withdraw. And I want to highlight that because that is, I think, the best summary of Tran's fair and just reason for withdrawal that he provides. He says, I want to investigate some kind of car factors. Had a whole raft of complaints about the wiretap affidavit in this case. But there's no specificity given as to what that argument is going to be, that this is the specific thing that I feel like I've left behind with my choice to plead guilty. You compare this very generalized, very broad allegation to something like the complaint in Gardner, which was a specific knock and talk search issue that the defendant was concerned about. And that's what the Gardner case says, it's that specific issue. None of that specificity is present here with Tran's complaint, again, about what I left behind, what this, you know, door number two, as opposed to pleading guilty. That matters because I've not seen a case under this court's car jurisprudence where something that broad and that generalized has triggered either an evidentiary hearing or relief under Rule 11. It would, again, based on my review of this court's car cases, lower the bar to it, you know, triggering an evidentiary hearing or whatever the case may be for something that really any defendant can allege. That I would rather have done some kind of a suppression, some kind of generalized, broad, kind of aimless suppression issue, but I was not provided the opportunity to do that. We're not talking about wiretap evidence. There's some complaints about the wiretap affidavit. Again, it's kind of all over the place. There's some complaints about wiretap affidavits over here. There's some complaints about whether the correct . . . But if it's about wiretap evidence, then that's a little more than just some vague general . . . And so that's correct. In certain parts of the record, there are some specific complaints with some of the pro se letters that he sends to the district court, but ultimately what makes it to the motion to withdraw is something that's that generalized and broad. It's not crystallized into some specific suppression issue like it was in the Gartner case. So it's really hard to tell what that argument would have been because Tran, when he's sending these pro se letters to the court, has all kinds of different complaints about the wiretap and the affidavit. For example, that the service provider that was listed was wrong. That's one of the complaints that he has. But ultimately what makes it to his attorney's motion to withdraw is this very general thing. The second fact that I want to point out is at ROA 372, again, that is from the motion to withdraw. It's a fact that unfortunately we didn't . . . I think neither party really briefed that much. It's the fact that Tran had a second attorney. There is all this focus on Mr. Jenkins and the advice that Mr. Jenkins provided, but there is a second attorney that AFPD Marone mentions in her motion to withdraw. It's this gentleman from Texas who, as far as I know, is unaffiliated with Mr. Jenkins. That matters because there is no explanation anywhere in the record, at least before Judge Malazzo, about what advice Tran received from this attorney. He was co-counsel at the time of the trial and plea. So the explanation that's given in the motion to withdraw is that Tran had retained him. He is not, I believe, enrolled, and so he's not on the docket, and he also doesn't make an appearance for the trial and for the rearrangement. That's all handled by Mr. Jenkins. But in the motion to withdraw, it is explained that he had this second attorney that he had retained. You would expect that if this was such an important issue to Mr. Tran and his decision to plead guilty, that there would be some kind of explanation as to, well, I also got an assurance from the second attorney that I had, or the second attorney explained to me such and such about suppression but was overwhelmed by the advice by Mr. Jenkins or something like that, and there's just no explanation for any of that in the record. And then finally, this third fact that I wanted to highlight goes to some of your questions, Judge Englehart, about the other advice or the other statements that Tran heard about these suppression issues. Specifically at 470, that's Mr. Shapiro's statement during the motion to determine counsel hearing where he's talking about why, whether he should be fired and replaced with somebody else. And then at 223, that's in the government's motion at Lemonet, where the AUSA makes some representations about how we, the government, have sat down with Mr. Tran and talked to him about some of these suppression issues. He raised some complaints. We had a discussion with him and explained to him why they weren't actually an issue. That is significant to this case, and you asked, Judge Englehart, whether you should consider it. I think that the answer to that under Carr and the cases that have followed Carr is yes, although I would say Jenkins's representation is paramount. It still is corroborative and informative to look at these other things that are in the record. And what you get when you read Mr. Shapiro's statement to the magistrate judge and when you look at the motion at Lemonet is that Tran multiple times had it explained to him that these are frivolous complaints about suppression. This is stuff that doesn't actually matter, and if you raise these types of complaints, you're going, it's going to be a losing issue. Mr. Shapiro actually says, and we block quoted it in our brief, that he felt it was an ethical problem for him to pursue these suppression issues, that it would be so frivolous that he was worried about harming his reputation at the district court, and so he is explaining this in front of Tran during his motion to determine counsel hearing. That transcript's in our record here on appeal. Yes, it is. And again, that's the part that we block quoted is at ROA 470. Assume that everything Tran says is true about his attorney's erroneous advice, would it still be the government's position that he's not guilty? Yes. I think based on the record that's here, I want to unpack that a little bit because it goes to one particular car factor more than the other. There's been a lot in the briefing and an argument this morning about the close assistance of counsel car factor, and one thing that I wanted to point out, and Judge Willett, I believe you asked what is the best cases for the parties now that Gardner was superseded, and I think McKnight is the best case for us on that because it is explicit in McKnight that I think the exact statement in McKnight is the veracity of the attorney's advice is irrelevant to this car factor. It doesn't bear on this car factor at all, and McKnight, it was whether the attorney advised the defendant as to whether he'd be a career offender or not, and this court said even assuming that he gave bad advice about being a career offender, that's not what we're looking at for close assistance of counsel. Close assistance of counsel means availability. Is the lawyer there to talk to and to advise through the guilty plea proceeding? The quality of that advice really doesn't factor into that car factor. Really what that, assuming that everything is, as Mr. Tran said it was, what that goes to is the knowing and voluntary nature of the plea, and that's really what this appeal is about, is the knowing and voluntary nature of the plea. Again, I think that... One of those factors is whether or not withdrawal of the plea would prejudice the government. Yes, that's right. How would it prejudice the government? My understanding... To having the possibility of getting a life sentence is what counsel told. Is that correct? That's right. I believe that he was advised that it would be five to life when he did his guilty plea colloquy, and I've wrote down the guidelines range. It was 135 to 168, but that was after he got his acceptance points, and so I don't really know what it would be if he goes back and starts back at zero. The prejudice of the government also extends to, and this court has said it in some of its... Worst case scenario, if we have to go to trial now, how is it going to prejudice our ability to take this particular defendant to trial? I know, for example, in this case, some of the witnesses have since been released from prison. We're now years down the road because there was the very long delay between Mr. Tran's guilty plea and his sentencing, so it would complicate things in a way that, put it in the language of the car factor, is prejudicial. It would make things tougher than if... I'll leave it at that. Because witnesses may be unavailable? Witnesses may be unavailable, or the incentive to cooperate is gone if they've been released between now and then. It would complicate things, and again, that is something that this court has looked at. But it's a fact he's been incarcerated throughout the proceedings. I mean, pre-trial and throughout. I believe that's correct. And so looking at the knowing and voluntary nature of the plea, part of that that really is... Well, the big ticket items on the knowing and voluntary nature of the plea, there's no dispute about that. He was properly advised about the sentencing range, about the maximum sentence he could face, the elements of the crime, the fact that there wouldn't be a trial. I mean, he had picked a jury, so he knew that he wasn't going to get a trial. So there's this collateral issue of the suppression issue. Even accepting that everything that he's saying is true, that Mr. Jenkins advised him of this, based on the record that was before Judge Malazzo and the record that is before this court as part of this direct appeal, it's not enough. Again, going back to what I mentioned earlier, that it's just so generalized, it's so broad, that there's just no real reason to believe that this sort of nebulous complaint about perhaps I would like to pursue a suppression issue weighed that heavily on his decision to plead guilty, when he had just lost a 404 motion, when he had just lost his motion to eliminate, that the jury's been selected. And then you look at the timing of when he actually filed this motion to withdraw, when he really starts picking up on his pro se letters to the district court, is after he realizes he's going to be held accountable for the MDMA and the PSR, that there's some question as to whether those drugs should be counted against him in the PSR. The facts weighing against suppression weigh, there's just more of those and less of facts showing that this was actually significant and important to him. So Judge Willett, that's sort of a very long, winding response to your question, but yes, that would still be our position. Unless there's any further questions. We'd like to hear from you, Mr. Zuniga, if you'd like to add anything to that. I want to thank counsel for the government for kind of highlighting one of the problems and that is that we just don't know the kind of things we should know in this case. They said he wasn't enrolled as counsel and we know nothing about him. And that's precisely the point. Again, when we consider whether close assistance of counsel was provided, the record is kind of blank on that. All we know is that Mr. Trannigan complained about his representation. We don't know what Mr. Jenkins did. In fact, one thing Why should we assume that he too was neglectful? Who's that, Mr. Jenkins? The attorney that isn't of record that apparently was on the scene. Well, I suppose, Your Honor, it depends which way the burden lies, I guess. I mean, if we have no You want an evidentiary hearing, as I understand it? Yes, Your Honor. As one course of relief, and I think as we noted in our brief to that point, one thing that the district court did know at the time that Mr. Trann filed his motion withdraws, that Mr. Jenkins was no longer eligible to practice law on that date. Here comes a motion that says, I didn't receive close assistance of counsel. And by the way, the attorney that I had can't even practice now. He's been suspended for neglect, serial neglect of clients, I believe the Louisiana Supreme Court said. So in a scenario like that, it's not unreasonable to suggest that the appropriate course of action for the district court would be to say, well, let's have a hearing on this. This particular attorney, based on what we do know about his practice, and let's get to the bottom of this. And that didn't happen in this case. So, and the answer may be nothing or close to nothing, but what specific evidence was in fact pointed to in the district court to corroborate the allegation that Jenkins gave bogus advice about Mr. Trann's post-plea rights? Well, I don't believe it was a question of bad or bogus advice, Your Honor. I believe it was a question of no advice. I believe it was, the fact was that Mr. Jenkins provided the equivalent of no representation. Mr. McLaren talks about how generalized and how broad the allegation is. So I'm just trying to get a handle on what specific evidence was presented in the district court. Whatever adjective, erroneous, bogus, nonexistent, the advice that Jenkins gave Mr. Trann, what evidence was presented to the district court about how non-close the assistance was? I would say Mr. Trann's essentially unrebutted criticisms of Mr. Jenkins, both before trial saying that he hasn't spent meaningful time with me or advised me, and then post-trial saying, again, he hasn't met with me about sentencing. Mr. Jenkins never responded to that in any way. And then, you know, Mr. Jenkins withdrew and again was later suspended. But I guess the scenario I would propose is, you know, if a defendant went in and had no testimony whatsoever and the district court proceeded with the colloquy and he pleaded guilty, I think we would recognize that that was problematic. Well, let's say now he does have an attorney, but the attorney doesn't do anything. Does that change that particular scenario or not? And so our suggestion is that where a defendant goes into a plea hearing and an attorney is effectively nonexistent, is functioning as a potted plant, so to speak, then that doesn't meet the test for close assistance of counsel and therefore the plea has probably not been entered knowingly and voluntarily. Counsel for the government referenced a meeting or meetings that occurred between Mr. Trann and the government while the charges were pending at which, I'm sure, among other things, the motion, the suppression issue was discussed. When was the first time Mr. Trann was given a draft factual basis by the government and who was his attorney at that time, if you know? The factual basis was created the day of the guilty plea with Mr. Jenkins as an attorney. So they didn't have one created. They met, the jury was seated. At some point they said, well, we're going to switch to a guilty plea. Somebody says we better get a factual basis and that's when it's created. Thank you.